**JIN TENG LIN, Petitioner,**

v.

**Alberto R. GONZALES,[1] Respondent.**

No. 05–4699–ag.

United States Court of Appeals,
Second Circuit.

July 28, 2006.

**1.** Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

Liu Yu, New York, New York, for Petitioner.

Chuck Rosenberg, United States Attorney, Stephen L. Corso, Assistant United States Attorney, Houston, Texas, for Respondent.

PRESENT: Hon. JON O. NEWMAN, Hon. CHESTER J. STRAUB, Hon. ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

Jin Teng Lin, through counsel, petitions for review of a decision by BIA Member Edward R. Grant affirming Immigration Judge ("IJ") Roxanne Hladylowycz's denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jin Teng Lin,* No. A 79 682 699 (BIA Aug. 19, 2005), *aff'g* No. A 79 682 699 (Immig. Ct. N.Y. City Jun. 3, 2004). We assume that the parties are familiar with the underlying facts and procedural history of the case.

Where, as here, the BIA affirms the IJ's decision but limits its affirmance to certain of the IJ's grounds, we review the IJ's decision as modified by the BIA. *Xue Hong Yang v. U.S. Dept. of Justice,* 426 F.3d 520, 522 (2d Cir.2005). We apply the deferential "substantial evidence" standard to review the agency's findings of fact, a standard that "is slightly stricter than the clear-error standard that the circuit courts typically apply in reviewing a district court's factual findings." *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 149 (2d Cir.2003) (internal quotation marks omitted). We will uphold the agency's factfinding so long as it provides "specific, cogent reasons that bear a legitimate nexus to the finding ... [and] are not based on flawed reasoning, bald speculation, or conjecture." *Diallo v. Gonzales,* 445 F.3d 624, 629 (2d Cir.2006)

(internal quotation marks and citations omitted).

The BIA agreed with the IJ that Lin was not credible, citing the following as evidence: (1) a discrepancy between Lin's account and the one his mother gave in a letter submitted on his behalf (Lin testified to being detained at his church and interrogated for several hours in May 2001, while his mother thought the worshipers were first arrested and brought to the police station before being interrogated for several hours); (2) Lin claimed to be Episcopalian but was unable to explain the difference between that denomination and others; (3) Lin failed to provide a letter from his sister or from the doctor who allegedly saw him after he was beaten by the police; and (4) Lin testified that the police forced him to sign a guarantee that he would remain in town yet Lin was able to fly out of the country, without incident, using his own passport.

We find that these reasons do not withstand "substantial evidence" review, and therefore that the case should be remanded for reconsideration of Lin's application. The BIA's first ground, while valid, is not the type that would automatically discredit Lin's testimony, nor did the BIA rely on this ground above the others. We note that Lin's mother lacked first-hand knowledge of the incident and could well have misunderstood what happened (particularly as Lin claims he *was* arrested later that same year), whereas a fellow worshiper who was there corroborated petitioner's account in an affidavit.

The BIA's second ground is plainly invalid. As we have held, the agency cannot hold an applicant to some sort of doctrinal quiz to establish whether he genuinely belongs to a particular religious group. *Rizal v. Gonzales,* 442 F.3d 84, 90 (2nd Cir.2006). The agency's analysis was particularly flawed in this instance. Lin testified that he converted to Episcopalianism after being persuaded by a friend, and that it was the only denomination with which he had any contact, so it was hardly surprising that he was unable to compare it with other denominations. Moreover, Lin *was* able to quote from the bible, citing chapter and verse, when asked to do so by the Government.

As for the BIA's third ground, Lin's failure to provide corroboration from his sister or from the doctor who saw him was a legitimate consideration but not sufficient to constitute the main basis for the agency's decision. As we explained in *Diallo v. INS,*

[c]orroboration of the specifics of an applicant's personal experiences may also be reasonably expected, but only under certain circumstances. According to the BIA, specific documentary corroboration is required only for material facts which are central to the applicant's claim and easily subject to verification.... If the applicant does not provide such information, an explanation should be given. Applicants must supply supporting documentation only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers....

232 F.3d 279, 288–89 (2d Cir.2000). Moreover, before denying a claim as uncorroborated, the agency must "(a) identify the particular pieces of missing, relevant documentation, and (b) show that the documentation at issue was reasonably available to the petitioner." *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 153 (2d Cir.2003). Finally, the materiality of missing corroboration must be considered in the context of what documentary evidence an applicant *has* submitted. *Poradisova v. Gonzales,* 420 F.3d 70, 79 (2d Cir.2005).

Here, the agency failed to make any showing that it was reasonable to expect either a letter from Lin's sister, from whom Lin stated he was estranged, or a doctor's letter. With respect to the doctor's note, Lin testified only that he had a doctor look over his "bruises" to make sure there was "nothing much serious." It is difficult to see why such a visit would have generated any documentation or why that doctor would now, years later, be reachable and able to recall the incident. Finally, the agency failed to consider whether these documents were "obviously material," see *Poradisova*, 420 F.3d at 79, given that Lin already had submitted a letter from his mother, a letter from the friend who allegedly converted Lin and witnessed first-hand his persecution, a baptism certificate, and letters from two churches in the United States. For these reasons, the BIA's third ground is entitled to little weight.

■ Finally, the BIA found it implausible that Lin would, after signing an agreement not to leave home, nonetheless be able to pass through the airport, using his own passport, without incident. We find this ground impermissibly speculative. Petitioner's testimony is that he was arrested by "the police"—it is unknown of what jurisdiction—and taken to a police station in his village. He testified that he was held for eight days and released only after signing an agreement that he "would not leave the local community." He also had to post bail. While much here is murky, presumably the agreement was with local authorities, who would not be the ones checking passports. There is no reason to think that petitioner's name would be added to some sort of national no-fly list, even if China were capable of maintaining such a thing; instead, the agreement's primary enforcement mechanism appears to be forfeiture of petitioner's bail and harassment of his parents. Moreover, neither the IJ nor the Government raised this issue as a concern to give the petitioner an opportunity to clarify the situation. In these circumstances, the agency's final ground was invalid.

For the foregoing reasons, the petition for review is GRANTED. Having completed our review, Lin's pending motion for a stay of removal in this petition is DENIED as moot.